IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES of AMERICA                                         PLAINTIFF/RESPONDENT

V.                          No.  2:09-CR-20061-RTD
                            No.  2:10-CV-02141-RTD

JOSE MANUEL AMADOR-VILLANUEVA                                    DEFENDANT/PETITIONER


## REPORT AND RECOMMENDATION

Before the undersigned for report and recommendation is the petitioner's Habeas Corpus Petitions, (*See ECF No.* 35), filed September 16, 2010, under 28 U.S.C. Section 2255.  The Government filed its Response, *(See ECF No.* 39) on October 15, 2010, and the Petitioner has not filed a Reply.

### I.  Background

On September 23, 2009, Defendant was arrested based on a Criminal Complaint filed on September 16, 2009, (*See ECF No. 1*), charging that the defendant did "combine, conspire, confederate and agree with others to knowingly and did knowingly or in reckless disregard of the fact that aliens had come to, entered, or remained in the United State in violation of law, did harbor and shield illegal aliens detection by providing said aliens with means of financial support through employment at Amador Poultry Contracting and or J & A Loading.

On October 29, 2009, the United States filed a one-count Information charging that between January 1, 2008, and December 31, 2008, Amador-Villanueva knowingly or in reckless disregard of the fact that aliens had come to, entered, or remained in the United States in

-1-

violation of the law, did harbor and shield an illegal alien, Hector Garcia-Nunoz, from detection by providing said alien with a means of housing, transportation and financial support through employment at Amador Poultry Contracting (hereinafter referred to as "APC") located at 523 Sharp Chapel Road, Alma, Arkansas, said violation having been committed for the purpose of commercial advantage or private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and 8 U.S.C. § 1324(a)(1)(B)(I). (*See ECF No. 13*).

That same day, Amador-Villanueva appeared with his retained counsel, Marc Seitles, before the Honorable Robert T. Dawson for a Waiver of Indictment (*See ECF No.* 12). Additionally, a Plea Agreement was presented to the Court in which Amador-Villanueva agreed to plead guilty to the one-count Information and consented to the forfeiture of property included in the criminal forfeiture allegation. (*See ECF No. 15, ¶¶ 1, 18*).  The Plea Agreement specifically provided that at the sentencing hearing "the government will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to defendant's background, character and conduct, including the conduct that is the subject of this investigation for which he has not been charged up to the date of the Agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this agreement, as provided by § 1B1.3 of the Sentencing Guidelines." (*Id., ¶13*).

At the Plea Hearing, Amador-Villanueva acknowledged that he had signed the Waiver of Indictment and that he understood it. (*See ECF No. 20, p. 6*). Additionally, Amador-Villanueva acknowledged that he had signed the Plea Agreement and that he understood it. (*Id., p. 8*). Furthermore, Amador-Villanueva stated that he believed the United States could prove the facts as recited in the factual basis for the plea. (*Id., p. 13*).

Subsequently, the Court accepted Amador-Villanueva's plea of guilty and ordered a Presentence Report. (*Id. pp. 14 - 15*). The United States Probation Office prepared the Presentence Investigative Report on February 22, 2010. On March 1, 2010, the United States advised the probation office that it had no objections to the PSR. However, on April 19, 2010, Amador-Villanueva advised the probation office of his objections to Paragraph 20 (six level increase related to the number of aliens employed), Paragraph 22 (no two-level reduction for minor role in the offense), and Paragraphs 24, 26, and 46 (adjusted offense level).

On April 27, 2010, Amador-Villanueva filed a Sentencing Memorandum in which he argued that a sentence to a term of probation or its equivalent along with a period of home-confinement was justifiable because of his unique personal characteristics, his limited role in the offense, his slim chance of recidivism, and sentences of similarly prosecuted individuals. (*See ECF No.* 22). The defense specifically argued that the defendant was merely an employee and did not have any ownership interest in the company. (*Id., p. 6*).  The defense also argued that the defendant did not have the mental acuity to do anything but follow orders from his brother. (Id., p. 7).

The United States filed its Sentencing Memorandum on July 15, 2010, arguing Amador-Villanueva was more than a minor participant in the charged offense and should not be given a two-level reduction pursuant to U.S.S.G. § 3B1.2(b). (*See ECF No.* 26)

On July 16, 2010, Amador-Villanueva's sentencing was held. (*See ECF No.* 27) At sentencing, the Court considered Amador-Villanueva's three objections to the PSR along with his objection to the United States' Sentencing Memorandum asking the Court to strike the witness and pleading pursuant to Rule 32 of the Federal Rules of Criminal Procedure because he

believed the filing to be untimely. (*See ECF No. 34, pp. 6 - 7*) After testimony and presentment of evidence, the Court sustained the defendant's objection to the six level enhancement for any number of aliens other than the one mentioned in the indictment but overruled Amador-Villanueva's objection to Paragraph 22 of the PSR finding that he was not entitled to a two-level decrease as a minor participant and found that probation had correctly identified his role in the offense. (*Id., p. 47*). The Court sentenced Amador-Villanueva to 12 months imprisonment, three years supervised release, and a $100 special assessment. (*Id., pp. 60 - 61*). Judgment was entered on July 22, 2010. (*See ECF No.* 29). No appeal was taken by the Defendant from the Judgment imposed.

On September 16, 2010, Amador-Villanueva filed this instant Motion to Vacate, Set Aside, or Correct Judgment and Sentence under 28 U.S.C. § 2255 (*See ECF No.* 35) in which the Petitioner contends that his 5th and 6th Amendment rights were violated as a "consequence of the Prosecution's error in representing that the movant occupied a controlling or ownership position as to company affairs."

## II. Discussion

**A. Failure to Appeal:**

A § 2255 motion is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus" (See *Davis v. United States*, 417 U.S. 333, 343, 94 S.Ct. 2298, 2304, 41 L.Ed.2d 109 (1974)) but it is not a substitute for direct appeal. (See *U.S. v. Wilson*, 997 F.2d 429, 431 (C.A.8 (Ark.),1993)). Nonconstitutional and nonjurisdictional claims are generally procedurally foreclosed to a section 2255 petitioner if not raised on direct appeal. *Brennan v. U.S.*, 867 F.2d 111 at 120; *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir.1988). A

petitioner simply cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir.1992); see *Davis v. United States*, 417 U.S. 333, 345 & n. 15 (1974) (federal prisoner cannot assert on collateral attack a nonconstitutional claim that was not raised on direct appeal); *U.S. v. Capua*, 656 F.2d 1033 at 1037 (1981), *Anderson v. U.S.* 25 F.3d 704, 706 (C.A.8 (N.D.),1994).

Petitioner may not obtain § 2255 relief for "unappealed errors to which no contemporaneous objection was made" unless he can show **both cause and prejudice**. *Reid v. United States*, 976 F.2d 446, 448 (8th Cir.1992), cert. denied, 507 U.S. 945, 113 S.Ct. 1351, 122 L.Ed.2d 732 (1993).

The Defendant has attached three affidavits of family members which claim that the defendant was not an owner or operator of Amador Poultry but that his role was to "assist with the workers." (*See ECF No. 36-1*(Leo Amador), *36-3* (Kelly Amador) and *36-3* (Juan Amador)). All three were named in similar indictments.

Leo Amador was sentenced on July 22, 2010. (*See 2:09-cr-20058, ECF No. 27*)  Mr. Leo Amador's affidavit is consistent with previous statements given to law enforcement.  Kelly Amador's statement is consistent with a prior statement she gave to law enforcement on September 23, 2009 where she stated that Manuel Amador had five to six (chicken catching) crews and that Leo Amador had five to six crews that each were responsible for.  (*See ECF No. 34, p. 12)*.  Mr. Juan Amador was sentenced on July 22, 2010. (*See 2:09-cr-20059, ECF No. 22*). It does not appear that he gave a prior statement to law enforcement.

The main contention put forth in the affidavits that the defendant was not the owner of

Amador Poultry was asserted in the defense Sentencing Memorandum (*See ECF No. 22, p. 6*) and argued at the Sentencing Hearing. (*ECF No. 34*).

      The Government called Agent Woodrow who testified that three apartments used to house workers were in the defendant name and that undocumented workers were arrested in these apartments (*See ECF No. 34, p.9*); that the defendant was operating five to six crews consisting of 10-12 men per crew (*Id., p. 11*), which was confirmed by Viscus Olivias, an illegal alien employee and by Kelly Amador, (*Id., p. 12*); that illegal aliens were arrested in vehicles owned by the defendant (*Id., p. 12*), that the defendant drove or had driven illegal aliens to their work site (*Id., p. 13*) and that a workshop and garage was in the defendant's name (*Id., p. 14*). Woodrow also testified that the 2005 contract with OK Foods was listed the name of Juan or Leo or Manuel Amador and that in 2005 Manuel was issued 36 checks from OK foods, in 2006 he cashed 48 from Ok Foods and in 2008 he cashed 52 checks from OK Foods which was 100% of the number of checks issued. (*Id., p. 14*). The agent also testified that there were five to six crews catching chickens under the OK contract (*Id., p. 16*) and that the total number of illegal aliens linked to the defendant consisted of 24. (*Id., p. 17*). The agent also testified that he obtained the tax records for the defendant and on his 2008 tax return he claimed that he was a poultry contractor and had an income of $2,073,482. (*Id., p. 17*).

      The defense conducted extensive cross examination of Agent Woodrow and established that the bulk of the money seized was in the name of Leo Amador and that there was no document that established that the defendant was part owner of the company called Amador Poultry.

      The Defendant fails to provide a valid reason for failing to appeal this issue, and,

therefore, cannot satisfy the "cause" standard of *Reid v. United States*. Even if the court accepted that the defendant had shown just cause he has not established prejudice. The defendant has not shown that the court ever considered the defendant as the owner of APC and the affidavits presented provide no new evidence that had not been considered and weighed by the court.

**B. Due Process Claim:**

The Defendant seeks to avoid the problem of establishing "cause and prejudice" by claiming that the Government violated his Due Process rights. "A due process violation is established only if the defendant shows that the district court relied on materially false information and that the information is demonstrably the basis for the challenged sentence." *United States v. Sandifer,* 188 F.3d 992, 994, (8th Cir.1999) (quoting *United States v. Carr*, 66 F.3d 981, 983 (8th Cir. 1995)). The Defendant contends that he was sentenced premised upon material misinformation, specifically that the "movant was or acted as an owner in this case" (*See ECF No. 36, p. 6*) and that the "Court relied upon misinformation concerning the critical issue of corporate/company control in imposing sentence. *(Id., pp. 8-9)* The Defendant has not asserted the specific claim or testimony complained of but has merely asserted general conclusions that the court believed that he was an owner of APC or that the court relied upon that fact in assessing its sentence.

During the sentencing hearing on July 16, 2010, the defendant objected to a sentencing enhancement in relation to the number of illegal aliens employed by the company, and argued that he was entitled to a two-level reduction for being a minor participant role in the organization. At no time did the government suggest that Amador-Villanueva's sentencing

range be enhanced for his leader/organizer role in the business, rather the United States just objected to him receiving a minor participant role adjustment.

In Amador-Villanueva's written Plea Agreement, the United States included paragraph 13 which stated "at the sentencing hearing, the government will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to the defendant's background, character and conduct, including all the conduct that is the subject of this investigation for which he has not been charged up to the date of this Agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this agreement, as provided by § 1B1.3 of the Sentencing Guidelines." Additionally, the United States included paragraph 20 which stated in pertinent part "although the government agrees not to object to certain findings by the probation office or to rulings of the court, it reserves the right to: make all facts known to the probation office and to the court, and call witnesses and introduce evidence in support of the Presentence Report." (*See ECF No. 15*)

Amador-Villanueva was initially charged by way of a Criminal Complaint on September 16, 2009. Attached to the Criminal Complaint was an Affidavit by the lead investigator of the case, ICE Special Agent Scott Woodrow. (*See ECF No. 1*). The Affidavit included the following summarized facts with regard to Amador-Villanueva's involvement with APC: APC was owned and operated by Amador-Villanueva (*¶ 6)*; Vehicles utilized by APC were registered in Amador-Villanueva's name ( *¶ ¶ 13 & 16*); Amador-Villanueva signed three apartment leases to provide housing to employees of APC (*¶ 14*); Amador-Villanueva arrived at the scene of a traffic stop in Alma, Arkansas, on April 15, 2009, to take possession of $15,967.00 cash from two illegal aliens which was divided into envelopes for payment to employees and stated the

company was owned by a "white lady" (¶ *17*); During interviews on April 15, 2009, Manuel Viescas-Olivas stated Amador-Villanueva provided a van to a woman to transport him to work and Sergio Perez-Zarate stated he had been employed by Amador-Villanueva for the last seven years (¶ ¶ *18 &19*); During interviews on May 29, 2009, at the apartments leased by Amador-Villanueva, Pedro Rangel-Rameriz stated he gained employment with Amador-Villanueva in April 2008, and Teodoro Ruiz-Verde stated he had worked for Amador-Villanueva for about three years and had lived in the apartment leased by Amador-Villanueva during that time (¶ ¶ *22 & 23*); During an interview on June 8, 2009, Hector Garcia-Nunoz stated that he had worked for Amador-Villanueva for the last four years, and his girlfriend's daughter had been hired by Amador-Villanueva to drive his workers (¶ *25*); During an interview on July 9, 2009, Jose Ricardo Silvestre-Torres stated he had been employed by Leoncio Amador for about a month, but had previously worked for Amador-Villanueva prior to his last arrest by ICE (¶ *29*); and for the tax years 2005, 2006 and 2007, the Forms 1099 from O.K. Farms, Inc. were issued to Juan or Leo or Amador-Villanueva, listing the APC tax identification number (¶ *46*).

Scott Woodrow, a Special Agent with the Department of Homeland Security, Immigration Customs Enforcement, testified at the sentencing hearing that four individual he arrested in an apartment leased by the defendant were illegal aliens. (*See ECF No. 34, p. 10-11*). That on April 15, 2009 the officer arrested Manuel Viscus Olivias who stated that the defendant had five to six crews that he was managing and each crew consisted of 10-12 individuals. *(Id., p. 12)*. The officer also testified that Kelly Amador gave a statement on September 23, 2009 and stated that the defendant was in charge of five to six crews. (*Id., p. 12*). The officer also testified

that on September 23, 2009 a vehicle, registered to the defendant was stopped and the vehicle contained six illegal immigrants who admitted they were driven to their work sites by the Defendant. (*Id., p. 12*). Scott Woodrow also testified that of the "100 employees that we arrested in the Alma Amador Poultry Contracting investigation, except for the defendants and co-defendants, 100 percent of them were illegal aliens." (*See ECF 34, pp. 19-20*). None of the affidavits provided by the defendant attack these specific facts testified to by Agent Woodrow. There is certainly more than sufficient evidence for the court to have found that the defendant was not a minor participant and at no place in the sentencing rationale does the court assert that it found that the defendant was the owner of Amador Poultry Contracting.

**C. Evidentiary Hearing:**

A section 2255 petition can be dismissed without an evidentiary hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusory. *Evans v. U.S.,* 200 F.3d 549, 551 (C.A.8 (Iowa),2000); *See also U.S. v. Borrero*, 2009 WL 2005221, 3 (D.Minn.) (D.Minn.,2009). As previously stated the defendant's contention that the court relied upon misinformation is conclusory and not supported by the record.

### III. Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. §2255 be dismissed with prejudice.

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1). The failure to file**

**timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

      **IT IS SO ORDERED** this 20th day of December 2010

                                        */s/ J. Marschewski*
                                        James R. Marschewski
                                        Chief United States Magistrate Judge